**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3060-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERIK RE'VOAL,

    Defendant-Appellant.

_____

Submitted April 9, 2024 – Decided May 2, 2024

Before Judges Smith and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 94-05-0578.

Erik Re'Voal, appellant pro se.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Leandra L. Cilindrello, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Erik Re'Voal, appeals the March 1, 2022 order denying his motion to correct an illegal sentence, pursuant to Rule 3:21-10(b)(5). The

motion judge found defendant's claims replicated issues previously raised and rejected in his prior state and federal appeals and petitions and otherwise lacked substantive merit. We affirm on the same procedural grounds.

I.

A.

In 1998, defendant was sentenced to life imprisonment with thirty years of parole ineligibility after a jury convicted him of first-degree murder and related firearms offenses. The charges arose from a 1993 fatal shooting during a drug transaction in Paterson. Defendant proceeded to trial after rejecting a plea offer to a reduced charge of aggravated manslaughter with a recommended sentence of twenty-five years' imprisonment with twelve-and-a-half years' parole ineligibility. At the last pretrial conference, defendant's trial counsel represented that he reviewed the evidence and plea offer with defendant, who then rejected the plea. The trial court expressly inquired, "[Defendant] does understand the consequences he faces if convicted of murder in the first-degree?" Counsel acknowledged the mandatory thirty-year parole disqualifier, and defendant confirmed he understood. Defendant also affirmed his awareness that, by contrast, aggravated manslaughter carried a maximum sentence of thirty years. The court then stated, "All right. As long as he understands what the

2

parameters are.  It's obviously his right to have a trial.  It's a very favorable resolution, if the person is guilty.  But, of course, he's maintaining his innocence."  The trial court, to avoid "Monday morning quarterbacking should [defendant] be found guilty of murder," confirmed that defendant rejected the plea and proceeded to trial.

The record shows that the victim, Bernard "Willie" Green, and his associate, Anthony Fields, were selling drugs on a streetcorner with a friend, Charneice Forbes, positioned nearby as lookout.  Fields testified that an individual, then unknown to them but later identified as defendant by Fields and other witnesses, drove up and held up two fingers signaling his desire to purchase "two base" of crack cocaine.  As Green approached, the car pulled away.  Green and the others grew suspicious, and, when the car returned, asked another friend to position his car to block defendant's car in case defendant attempted to do "something funny."  Green approached the driver's window as Fields walked around the vehicle, suspecting the driver was possibly law enforcement due to a police decal on the window.  Claiming he saw the driver reach under the seat and pull out a revolver, Fields yelled, "watch out he's got a gun" and started to run away when he heard a gunshot.  He turned and saw the

victim lying in the street and the driver pointing the gun out the window. Green died from one gunshot to the head.

Forbes' testimony was only partially consistent with Fields' account. She recalled that when the car returned, Fields approached the driver and "punched" or "reached in like he was going to hit" the driver. The driver then moved away and "came back up" after which time she heard the shot. She looked and saw Willie Green on the ground before leaving to find Green's mother. Forbes described the car and the driver to police, and, later, while at the police station, identified defendant as the shooter when he walked in the door with police. Forbes claimed she spoke to defendant and accused him of shooting Green, to which defendant responded that he "would do it again." The police located defendant after tracing the license plate to the car's owner who advised she loaned the car to defendant and directed police to his location. Fields and others identified both the car and the defendant, and the jury found defendant guilty on all counts.

At sentencing, the court applied aggravating factors one and two, N.J.S.A. 2C:44-1(a)(1) and (2), concerning the nature of the offense and the harm inflicted on the victim, describing the offense as a point-blank shooting of a particularly vulnerable, unarmed victim. The court applied aggravating factor

4

three, N.J.S.A. 2C:44 1(a)(3), citing the risk of reoffending, and nine, N.J.S.A. 2C:44-1(a)(9), finding a specific need to deter defendant as well as others. The court acknowledged defendant's lack of prior record and applied mitigating factor seven, N.J.S.A. 2C:44-1(b)(7). Rejecting mitigating factors three, four, five, and eight, N.J.S.A. 2C:44-1(b)(3) to (5), and (8), the court found nothing about the victim's conduct leading up to the shooting that excused, justified, or induced defendant's conduct. Similarly, the court found defendant's drug use did not justify his behavior, but instead increased the risk of re-offense. Determining that the aggravating factors substantially outweighed the mitigating factors, the court, after merger, imposed a life sentence with thirty years' parole ineligibility on the murder count and a concurrent term of five years' imprisonment with two-and-a-half years of parole ineligibility on the firearm charge.

B.

We denied defendant's direct appeal in 2001, affirming both the length of the sentence and the sentencing court's application of aggravating and mitigating factors. State v. Re'Voal, No. A-2197-98 (App. Div. Mar. 14, 2001), certif. denied, 171 N.J. 41 (2002). Defendant petitioned for post-conviction relief (PCR) in April 2002, raising ineffective assistance of counsel, including his

claim that he was never advised that his maximum exposure was life in prison. Following an evidentiary hearing in which defense counsel testified that he informed defendant of his sentencing exposure, the PCR judge issued a twenty-six-page opinion denying defendant's petition, which this court affirmed. State v. Revoal, No. A-6026-05 (App. Div. Jan. 30, 2008), certif. denied, 195 N.J. 420 (2008).[1]

Subsequently, on September 17, 2008, defendant filed a petition for habeas corpus in the federal district court raising various ineffective assistance of counsel and due process claims, including again his claim that he was not advised of his sentencing exposure before rejecting the plea offer. Re'Voal v. Ricci, No. 08-4649, 2011 U.S. Dist. LEXIS 10074 (D.N.J. Feb. 1, 2011). The District Court rejected the habeas petition, finding its claims had already been addressed on PCR and denied. Id. at *19-33.

On July 13, 2021, twenty-three years after sentencing, defendant filed the present motion to correct what he casts as an illegal sentence pursuant to Rule 3:21-10(b)(5). Echoing his past challenges, defendant claimed violation of his

---

[1] The PCR court's opinion was not provided in the appendix, but the decisions on state PCR appeal and federal habeas corpus petition explored and affirmed the PCR motion decision.

due process rights because the trial court did not conduct a "pretrial memorandum hearing" under Rule 3:9-1(f), again asserting that he was not advised of his "maximum exposure" to life imprisonment before rejecting the plea offer. As he did in his PCR and habeas petitions, defendant urges that had he known he faced a potential life sentence, he would not have accepted the State's plea offer. Defendant again challenged the sentencing court's consideration of aggravating and mitigating factors. On March 1, 2022, following oral argument, the motion judge denied defendant's motion in a comprehensive oral opinion addressing each of defendant's substantive claims.

On appeal, defendant offers the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT DEFENDANT'S SENTENCE SHOULD NOT BE CONSIDERED FOR RESENTENCING BECAUSE THE SENTENCE EXCEEDED THE PENAL[TY] AUTHORIZED BY THE STATUTE AND THAT IS NOT IN ACCORDANCE WITH N.J. STATE LAW AS THE AGGRAVATING AND MITIGATING FACTORS FOUND BY THE TRIAL COURT WHICH WERE NOT SUPPORTED BY THE RECORD U.S. CONST. AMEND. VI, XIV; N.J. CONST. ART. I, PAPR. 10 (1947).

POINT II

THE TRIAL COURT ERRED WHEN IT RULED THAT DEFENDANT'S DUE PROCESS WAS NOT VIOLATED UNDER BOTH THE FOURTEENTH AMENDMENT OF THE U.S. CONST. AMEND. XIV, AND ART. 1 & PARA. OF THE N.J. CONST. (1947) REGARDING HIS MAXIMUM SENTENCE EXPOSURE TO R. 3:9-1(F).

POINT III

THE CUMULATIVE EFFECT OF THE ERRORS, COMBINED WITH TRIAL COUNSEL'S OMISSIONS, DEPRIVED DEFENDANT OF A FAIR TRIAL. (Not raised below.)

We find defendant's claims are not cognizable under Rule 3:21-10(b)(5) and are otherwise procedurally barred.

II.

Rule 3:21-10(b)(5) provides that "[a] motion may be filed and an order may be entered at any time . . . correcting a sentence not authorized by law including the Code of Criminal Justice . . . ." Claims asserting the illegality of a sentence are reviewed de novo, State v. Nance, 228 N.J. 378, 393 (2017), as are questions of law regarding whether claims are procedurally barred. See State v. Robinson, 217 N.J. 594, 603-04 (2014). Our Criminal Code does not define what constitutes an "illegal sentence," but our courts recognize "two categories of illegal sentences: those that exceed the penalties authorized for a particular

8

offense, and those that are not authorized by law." State v. Hyland, 238 N.J. 135, 145 (2019). These categories "have been 'defined narrowly.'" Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)). Here, neither defendant's attacks on the excessiveness of his sentence and application of sentencing factors nor his challenge to pretrial procedure warrant review under Rule 3:21-10(b)(5). No alternative route for review exists as defendant's sentencing arguments were raised and resolved in prior proceedings, and the claims regarding the pretrial conference, to the extent not previously addressed, are time-barred.

## A.

First, defendant's challenge to the length of his sentence does not touch upon its "legality" within the meaning of Rule 3:21-10(b)(5). It is well-settled that "mere excessiveness of sentence otherwise within authorized limits, as distinct from illegality by reason of being beyond or not in accordance with legal authorization, is not an appropriate ground of post-conviction relief and can only be raised on direct appeal from the conviction." State v. Clark, 65 N.J. 426, 437 (1974). Defendant's sentence, falling at the top, but within, the statutorily authorized range was previously upheld on direct appeal. Consequently, the claim is barred from reconsideration here. See State v. Njango, 247 N.J. 533,

544 (2021) (recognizing that full and fair litigation of an issue becomes law of the case preventing its relitigation in the same or subsequent proceeding).

Likewise, defendant's arguments regarding the application of sentencing factors, previously addressed on direct appeal, fall beyond the purview of Rule 3:21-10(b)(5).  If a sentence falls within the statutory range, "issues relating to the determination of aggravating and mitigating factors, the balancing thereof and the conclusions resulting from that balancing generally deal with claims of 'excessiveness', as opposed to 'illegality . . . .'"  State v. Ervin, 241 N.J. Super. 458, 472 (App. Div. 1989).  More specifically:

> While identification of the applicable aggravating and mitigating factors may perhaps lend itself to abstract and objective analysis, the weighing process envisioned by the Code's provisions necessarily reflects the seasoning and experience of the particular sentencing judge.  To permit post-conviction review of the adequacy of the sentencing judge's findings and conclusions would open the gates to an avalanche of grievances, often long after the sentence was imposed.  In light of the availability of relief by way of direct appeal, we perceive no need to make post-conviction relief an open sesame for the wholesale review of sentences.
>
> [State v. Flores, 228 N.J. Super. 586, 595-96 (App. Div. 1988).]

Thus, "the adequacy of the sentencing court's findings and the sufficiency of the weighing process employed should be addressed only by way of direct appeal." Id. at 595; see also State v. Acevedo, 205 N.J. 40, 45-47 (2011).

Here, defendant unsuccessfully contested the sentencing court's findings of aggravating and mitigating factors on direct appeal. The redundant present request for relief is both beyond the scope of Rule 3:21-10(b)(5) relief and barred as previously raised. See Njango, 247 N.J. at 544. Although the motion court painstakingly reviewed again the substantive merits of the defendant's assertions, we see no appropriate claim compelling us to revisit our opinion affirming the application of the sentencing factors.

B.

Next, defendant's claim that the trial court failed to advise him of his upper sentencing exposure at the final pretrial conference similarly fails to implicate Rule 3:21-10(b)(5) as it challenges pretrial procedure, not defendant's sentence. Whether or not the trial court expressly advised defendant of the maximum sentencing exposure before defendant rejected the State's plea offer bears no resemblance to a question of sentencing illegality under Rule 3:21-10(b)(5). The challenge should have been raised on direct appeal or certainly at the time of defendant's PCR petition when defendant asserted this precise issue while

alleging ineffective assistance of his trial counsel. That defendant claims violation of his right to due process does not change the calculus.

At its core, this claim amounts to an attempt at a second PCR petition and, therefore, is subject to the limitations established in Rule 3:22-4(b) and Rule 3:22-12(a)(2). While an order to correct an illegal sentence "may be entered at any time," R. 3:21-10(b)(5), a second PCR petition must be filed within one year and only in very limited circumstances not present here, see R. 3:22-12(a)(2)(A) to (C). Defendant's claim is not based on Supreme Court-approved retroactive application of a new rule of constitutional law, R. 3:22-12(a)(2)(A), the discovery of a factual predicate incapable of discovery earlier "through the exercise of reasonable diligence," R. 3:22-12(a)(2)(B), or an allegation of ineffective assistance of counsel with respect to a prior PCR petition, R. 3:22-12(a)(2)(C). Time limits may be waived to prevent a fundamental injustice, but only if their relaxation does not undermine their dual key purposes: "to ensure that the passage of time does not prejudice the State's retrial of a defendant" and "to respect the need for achieving finality." State v. DiFrisco, 187 N.J. 156, 166-67 (2006) (citing State v. Mitchell, 126 N.J. 565, 575-76 (1992)). We see no basis to consider this time-barred claim that was clearly known to the defendant and addressed in prior proceedings.

Although we are satisfied that defendant's claim is procedurally barred, for completeness we briefly comment on the merits. As noted, the record demonstrates that trial counsel advised defendant of his maximum sentencing exposure before defendant rejected the State's plea offer. Consequently, no prejudice resulted from the trial court's alleged failure to specifically state on the record that if convicted, defendant's exposure was a life sentence.

We have carefully considered and reject each of defendant's arguments singularly, and therefore conclude no cumulative effect warrants relief.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13